740 A.2d 157

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DORIAN GASKIN, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CHRISTOPHER GASKIN, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted August 24, 1999—Decided November 8, 1999.

564

Before Judges KLEINER and BRAITHWAITE.

*Ivelisse Torres*, Public Defender, attorney for appellant Dorian Gaskin (*Jack Gerber*, Designated Counsel, on the brief).

*Ivelisse Torres*, Public Defender, attorney for appellant Christopher Gaskin (*Jeffrey L. Weinstein*, Designated Counsel, on the brief). Appellant filed a pro se supplemental brief.

*Glenn Berman*, Middlesex County Prosecutor, attorney for respondent (*John N. Shaughnessy*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

In a joint trial presented to a jury, defendant Christopher Gaskin and his brother, defendant Dorian Gaskin, were convicted of first-degree armed robbery, *N.J.S.A.* 2C:15–1 (count one) and fourth-degree possession of an imitation firearm under circumstances that would lead a reasonable person to believe that it was possessed for an unlawful purpose, *N.J.S.A.* 2C:39–4(e) (count four), as amended by the trial judge at the close of the State's

case. Each defendant was acquitted on count two, which charged a separate first-degree robbery, *N.J.S.A.* 2C:15-1, and on count three, which charged unlawful possession of a weapon, *N.J.S.A.* 2C:58-4. The indictment, as returned by the Middlesex County Grand Jury, also named Charles Jeter, a/k/a Charles Bell, as a co-defendant on each count of the indictment. Prior to trial, Jeter entered into a plea agreement and agreed to testify against the Gaskin brothers.

Both robberies occurred on the Douglass University campus between 8:15 p.m. and 8:30 p.m. on September 18, 1996. The victim of the first robbery was Jose Villagran and the robbery was witnessed by one of Villagran's classmates, Christopher Kimmler. The victim of the second robbery was Sean Keating.

Immediately prior to the joint trial, it was determined that defendant Dorian Gaskin's name had not been included within count two of the indictment. The trial judge determined that the Middlesex Grand Jury had voted sixteen to zero to indict Dorian Gaskin for the robbery of Keating; however, the trial judge concluded that the jury would not be permitted to consider any robbery charge against Dorian Gaskin as to victim Keating. However, the judge also ruled that any reference to Dorian Gaskin's participation in the Keating robbery might be evidential as to the issue of Dorian Gaskin's participation in the robbery charge as to victim Jose Villigran.

Following defendants' convictions, Dorian Gaskin was sentenced as a youthful offender to a custodial term of twelve years, to be served at Yardville. Defendant's conviction under count four was merged with his conviction under count one. A parole ineligibility period was not imposed. Additionally, appropriate statutory penalties were imposed.

Christopher Gaskin was sentenced to a custodial term of twenty-five years with a five-year period of parole ineligibility on count one. Defendant's conviction on count four was merged with his

conviction on count one. Appropriate statutory penalties were imposed.[1]

On appeal, defendant Dorian Gaskin raises seven separate points of error:

*POINT I*

THE CONVICTION MUST BE REVERSED FOR NONCOMPLIANCE WITH *RULE* 1:2–3 FOR FAILURE TO PROPERLY DESCRIBE DEFENDANT'S PHOTOGRAPH (Not raised below).

*POINT II*

THE CONVICTION MUST BE REVERSED FOR NONCOMPLIANCE WITH *RULE* 1:2–3 FOR THE STATE'S FAILURE TO PRESERVE THE DEFENDANT'S PHOTOGRAPH (Not raised below).

*POINT III*

INTRODUCTION OF THE DEFENDANT'S PHOTOGRAPH AS TO IDENTIFICATION OF COUNT 2 AS IT MIGHT APPLY TO COUNT 1 IS CONTRARY TO *N.J.R.E.* 404(b) AND THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S APPLICATION FOR A NEW TRIAL.

*POINT IV*

THE CONVICTION MUST BE REVERSED FOR DEFECTS IN THE CHARGE.

*POINT V*

THE CONVICTION MUST BE REVERSED FOR JUROR CONDUCT IMPUGNING THE RELIABILITY OF THE VERDICT AND THE COURT ERRED IN NOT GRANTING THE DEFENDANT'S APPLICATION FOR A NEW TRIAL.

*POINT VI*

THE TRIAL OF THE DEFENDANTS SHOULD HAVE BEEN SEVERED (Not raised below).

*POINT VII*

THE SENTENCE WAS EXCESSIVE.

On appeal, defendant Christopher Gaskin raises two points of error:

*POINT I*

THE IDENTIFICATION PROCEDURE USED WAS IMPERMISSIBLY SUGGESTIVE AND INHERENTLY UNRELIABLE.

---

[1] These separate appeals were not consolidated but were scheduled on the same dispositional calendar. Because of the similarity of the issues raised by the defendants, we have elected to issue one consolidated opinion.

*POINT II*

THE TRIAL COURT'S FAILURE TO CHARGE THE JURY ON IDENTIFICA-
TION WHEN IDENTIFICATION WAS THE ESSENTIAL ISSUE IN THE
CASE DEPRIVED DEFENDANT OF A FAIR TRIAL (Not raised below).

In addition, this defendant filed a supplemental brief relying upon *State v. Cromedy*, 158 *N.J.* 112, 727 *A.*2d 457 (1999), contending that not only did the trial judge fail to give an adequate identification charge as required by *State v. Green*, 86 *N.J.* 281, 430 *A.*2d 914 (1981), but the facts of this case warranted a cross-racial identification charge because the eyewitness as to the count one robbery charge was Caucasian and defendants are African-American.

## I.

We commence our analysis of the points of error raised by both defendants with a brief review of the State's evidence presented at trial. Neither defendant testified at trial, although each defendant did present alibi witnesses, whose testimony was designed to demonstrate that neither defendant was at the scene of either of the two robberies. In addition, defendants' strategy was to attack the evidence presented by the State through cross-examination of the State's witnesses.

Jose Villagran, a Douglass College student, was walking from a night class to a bus stop when he was approached by three or four men. One of the men was holding what purported to be a handgun. While this culprit pointed the handgun at Villagran, a second culprit proceeded to remove two wallets from Villagran's rear pockets. Since Villagran knew that neither wallet contained money, he offered to permit his assailants to remove a change purse from his front pocket. Once the change purse was removed, the assailants fled. Villagran did not see any of his assailants' faces, though he was able to provide the investigating police officers with a general description of the men.

The ensuing investigation revealed that one of Villagran's classmates, Christopher Kimmler, had seen the robbery in progress. He testified that he saw two men approaching the victim and had

a clear observation of the face of one of those perpetrators. He also saw a third individual rifling through the victim's rear pockets.

Further investigation produced the names of both defendants as possible suspects in the two robberies. The Rutgers University police, in cooperation with the New Brunswick Police Department, prepared a group of fifteen photographs of African–American men with similar features. Neither Villagran nor Keating were able to select any of the men in the photographs as a participant in the respective robberies. The eyewitness Kimmler, after viewing the same fifteen photographs for approximately fifteen minutes, positively identified both Gaskin brothers as two of the individuals he observed near the scene of the Villagràn robbery. At trial, Kimmler positively identified defendant Christopher Gaskin as the person he observed standing to the rear of Villagran.

Further police investigation resulted in the arrest of a third perpetrator, co-defendant Charles Jeter. Subsequent to Jeter's arrest, he entered into a plea agreement in which the State agreed to recommend a custodial aggregate sentence of ten years and Jeter agreed that he would testify at the joint trial of the Gaskin brothers. At trial, Jeter identified Christopher Gaskin as the defendant who held the toy pistol during both robberies and identified Dorian Gaskin as the individual who removed the wallets from Villagran's rear pockets. Although Jeter's testimony conflicted to a slight degree with the identification testimony offered by witness Kimmler, the testimony of both Kimmler and Jeter was sufficient to prove that both defendants had participated in the Villagran robbery.

## II.

Points I and II of defendant Dorian Gaskin's appeal contend that a violation of *Rule* 1:2–3 constitutes plain error, which requires reversal of defendant's conviction. We disagree and find defendant's contention without merit. *See R.* 2:11–3(e)(2). We add these additional comments.

■ *Rule* 1:2–3 requires in pertinent part, "[t]he verbatim record of the proceedings shall include references to all exhibits and, as to each, the offering party, a short description of the exhibit stated by the offering party or the court, and the marking directed by the court." *R.* 1:2–3. Here, the two photographs identified by the witness Kimmler were marked S–1 and S–2 in evidence. S–2 in evidence received no specific marking other than the number of the exhibit. S–1 in evidence was marked "hands in pocket." The eyewitness had identified S–1 as depicting the man he observed rifling Villagran's rear pockets. Although the marking on exhibit S–1 might have been clearer, nonetheless, when the words "hands in pocket" are read in conjunction with the eyewitness' testimony, it is abundantly clear that S–1 referred to defendant Christopher Gaskin and thus by inference, that the exhibit S–2 referred to defendant Dorian Gaskin. Additionally, the identification of each defendant was confirmed by the testimony of co-defendant Jeter. Defendant Christopher Gaskin did not object to the introduction of either S–1 or S–2 at trial. Where no objection has been offered by a defendant at trial, a conviction will only be reversed for reasons of plain error, which is, error "of such a nature as to have been clearly capable of producing an unjust result...." *R.* 2:10–2; *see State v. Macon,* 57 *N.J.* 325, 337, 273 *A.2d* 1 (1971). We fail to see how the somewhat vague marking on exhibit S–1 and the absence of any marking on exhibit S–2 constitutes plain error, nor can we say that the failure of the trial court to strictly adhere to the *Rule* 1:2–3 directive was capable of producing an unjust result.

■ That same rule also requires, in pertinent part, "[f]ollowing the conclusion of trial, evidence shall be returned to the proponent and so acknowledged on the record unless the court otherwise orders." *R.* 1:2–3. Here, the record does not reflect that S–1 and S–2 were returned to the prosecutor at the close of the case. On appeal, the briefs clearly indicate that neither S–1 nor S–2 can be located. We fail to see how this procedural error constitutes plain error. *See R.* 2:10–2. *Rule* 1:2–3 is clearly a rule of trial

procedure. It fails to delineate any sanction for its violation, and we discern no constitutional violation of a defendant's rights where the court or its clerical employees fail to fully comply with its directive. Additionally, the record on appeal includes a lengthy pre-trial hearing as to the photographic identification by the witness Kimmler, including extensive findings of fact and conclusions of law by the trial judge. *See R.* 1:7–4. Any error under *Rule* 1:2–3 must be deemed harmless under the circumstances.

### III.

 Defendant Dorian Gaskin contends that introduction of identification evidence as to the Keating robbery as evidence of identification of defendant in the Villagran robbery violated *N.J.R.E.* 404(b). We disagree.

*N.J.R.E.* 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

In its latest analysis of *N.J.R.E.* 404(b), the Supreme Court in *State v. Covell* clearly reaffirms its interpretation of that rule as previously discussed in *State v. Cofield:*

> [The] test is as follows: (1) [The evidence] must be relevant to a material issue; (2) It must be similar in kind and reasonably close in time to the offense charged; (3) The evidence of the other crime must be clear and convincing; and (4) The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [*State v. Covell,* 157 *N.J.* 554, 564, 725 *A.*2d 675 (1999) (citing *State v. Cofield,* 127 *N.J.* 328, 338, 605 *A.*2d 230 (1992)).]

It is quite evident that defendant Dorian Gaskin's possible involvement in the Keating robbery, less than one-half hour after his alleged involvement in the Villagran robbery, both of which were performed in an allegedly similar manner, and on the same campus was pertinent to the identification of Dorian Gaskin and met the standard for the admission of that evidence under *N.J.R.E.* 404(b).

## IV.

Defendant Dorian Gaskin contends that the judge's failure to provide the jury with an identification charge in conformity with *State v. Green*, 86 *N.J.* 281, 291–93, 430 *A.*2d 914 (1981), constituted plain error. *See R.* 2:10–2. Defendant Christopher Gaskin asserts a similar argument, but also contends that the failure of the judge to provide the jury with a cross-racial identification charge in conformity with *State v. Cromedy*, 158 *N.J.* 112, 131, 727 *A.*2d 457 (1999), also constitutes plain error within the purview of *Rule* 2:10–2. We disagree.

Initially, we note that at the charge conference conducted by the court, the need for an identification charge was fully discussed. Neither defense counsel specifically requested an identification charge. When the trial judge indicated that he was of the opinion that a general charge on credibility would suffice, neither counsel objected. Additionally, the trial of the matter preceded the decision in *State v. Cromedy, supra,* and Christopher Gaskin's counsel did not request that a cross-racial identification be given. More importantly, the Villagran robbery conviction did not depend solely upon a photographic identification of the eyewitness Kimmler, a Caucasian, but the conviction was clearly predicated upon the strong detailed testimony of the co-defendant Jeter, who had entered a plea agreement which provided that he testify at trial. Jeter's testimony was quite specific. Jeter outlined the plans of the three culprits to commit both robberies. He fully explained the role that each defendant played in performing each robbery and fully explained what action was taken by each culprit following the Keating robbery.

Although as a matter of general procedure a trial judge should in most, if not all, cases provide the jury with an identification charge in conformity with *State v. Green, supra,* the failure to do so is not critical nor does it rise to the level of plain error requiring reversal in those instances where the State's evidence provides the jury with strong corroborative evidence of identification. *See State v. Salaam*, 225 *N.J.Super.* 66, 69, 541 *A.*2d 1075

(App.Div.1988). The strong and detailed evidence of co-defendant Jeter clearly provided corroboration for the eyewitness and photographic identification offered by Kimmler. We conclude that the principles of *State v. Macon, supra,* do not apply.

## V.

In Dorian Gaskin's fifth point of error he contends that a colloquy between one juror and the judge impugns the integrity of his conviction and requires a reversal of same. We disagree.

After the jury announced that it had reached a unanimous verdict, the jury was polled. One juror indicated that the guilty verdict as announced by the foreperson was in fact her verdict, yet requested to speak privately with the trial judge. The judge completed the jury poll indicating that, in fact, the jury had voted unanimously to convict both defendants on counts one and four of the indictment.

In a private conversation on the record with the juror who had requested the conference, the juror repeatedly indicated that the guilty verdict was in fact her personal verdict; she merely expressed her personal anxiety with the enormous responsibility of being a juror and analyzed her responsibility as if she were "playing God." Despite the juror's anxiety, she expressed in three separate instances that the verdict as announced was her verdict, she fully comprehended the judge's charge on "reasonable doubt," and that she had no doubt as to the guilt of the defendants. We are fully satisfied that the judge's meeting with the juror, on the record, was proper and are also fully satisfied that the juror, although anxious about the solemnity of the decision, had reached her decision as to guilt without being pressured either by her fellow jurors or by the court's inquiry. Once the court determined that the particular juror had concurred in the general result, the purpose of polling the jury had been fulfilled. *See State v. Schmelz,* 17 *N.J.* 227, 236, 111 *A.*2d 50 (1955). The trial judge properly performed his judicial function and we discern no error in the manner of its inquiry.

## VI.

■ Dorian Gaskin raises for the first time on appeal that his trial and his brother's trial should have been severed. We reject this argument. First, defendant did not seek severance of the trials in any pre-trial motion; second, even after it was determined that Dorian Gaskin was not named as a defendant in the indictment as to the second armed robbery, he did not seek a severance; and third, defendant fails to assert any cogent reason why severance *sua sponte* was either appropriate or required.

Joinder of defendants in a criminal trial is governed by *Rule* 3:7–7, which provides:

> Two or more defendants may be charged in the same indictment or accusation if they are alleged to have participated in the same act or transaction . . . constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. The disposition of the indictment or accusation as to one or more of several defendants joined in the same indictment or accusation shall not affect the right of the State to proceed against the other defendants. Relief from prejudicial joinder shall be afforded as provided by *R.* 3:15–2.

Thus, the fact that Dorian Gaskin was inadvertently omitted from the second count of the indictment did not require that the entire indictment as to Dorian Gaskin be severed from the trial of Christopher Gaskin.

■ Additionally, a joint trial is favored where the evidence against more than one defendant is largely the same. The joint trial creates efficiency in the judicial process, is convenient to witnesses and victims, avoids inconsistent verdicts, and is more accurate in the assessment of relative culpability. *See State v. Sanchez,* 143 *N.J.* 273, 282, 670 *A.*2d 535 (1996) (citations omitted).

## VII.

■ We have reviewed the transcript of defendant Dorian Gaskin's sentence. We conclude that the trial judge fully accorded weight to the fact that defendant was a youthful offender having committed his first indictable offense. This is obvious from the fact that the judge sentenced defendant as a youthful offender

with his custodial term to the Youth Correctional Facility at Yardville. The judge therefore properly analyzed the aggravating and mitigating factors. Under the circumstances, defendant's sentence was more than fair and was quite appropriate. We have no reason to disturb the sentence imposed. *See State v. O'Donnell,* 117 *N.J.* 210, 564 *A.*2d 1202 (1989); *State v. Ghertler,* 114 *N.J.* 383, 555 *A.*2d 553 (1989); *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984).

The conviction and sentence imposed upon defendant Dorian Gaskin is affirmed.

The conviction of defendant Christopher Gaskin is affirmed.