**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4132-14T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

T.M.,

    Defendant-Appellant.

_____

IN THE MATTER OF D.M. and B.T.,

    Minors.

_____

Argued June 7, 2017 — Decided July 5, 2017

Before Judges Alvarez, Accurso and Lisa.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Union
County, Docket No. FN-20-0114-11.

Clara S. Licata, Designated Counsel, argued
the cause for appellant (Joseph E. Krakora,
Public Defender, attorney; Ms. Licata, on
the brief).

Julie B. Colonna, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney;
Andrea M. Silkowitz, Assistant Attorney

General, of counsel; Ms. Colonna, on the
brief).

Olivia Belfatto Crisp, Assistant Deputy
Public Defender, argued the cause for minor
D.M. (Joseph E. Krakora, Public Defender,
Law Guardian, attorney; Ms. Crisp, on the
brief).

PER CURIAM

Defendant T.M. appeals from a January 31, 2012 order of the
Family Part, now final, finding she abused and neglected her
five-year-old daughter D.M. (Della)[1] by excessive corporal
punishment in violation of N.J.S.A. 9:6-8.21c. Because we agree
with the Division of Child Protection and Permanency and the Law
Guardian that substantial credible evidence in the record
supports the trial judge's finding of abuse and neglect, we
affirm.

The essential facts adduced at the hearing are easily
summarized. The referral to the Division came from Della's
father's fiancé. She testified that when Della came to spend
the prior weekend with them, she had "big bruises on her left
leg, . . . on her arms too. And she had a big bump . . . on her
forehead." Della claimed she got the bruises from a beating by
her mother and her mother's boyfriend. According to the child,

---

[1] We refer to the child by a fictitious name in order to protect
her privacy.

the bump on her forehead happened when her mother threw a hairbrush at her.

Because this was not the first time the fiancé had seen bruises on the child, and the bruises were "still fresh," the fiancé photographed all the bruises she saw, including those on the child's buttocks, thighs and "by her private area." At the hearing, she identified each of the photos she took, when she took them, and described the bruises she saw depicted in the photos, their color and size.[2]

Della's father testified he viewed the photographs taken by his fiancé of his daughter and, after seeing the actual bruises, decided his fiancé should contact the Division to report what they saw. He confirmed the photos admitted in evidence, which he reviewed in the course of his testimony, were consistent with the bruising he observed on his daughter. He also testified that sometime around the weekend when he and his fiancé observed those bruises, T.M. told him not to bathe Della when she dropped the child off for the weekend. He testified he thought it odd

---

[2] When T.M.'s counsel objected to having only been provided with black and white photocopies of the pictures, the judge permitted all counsel to examine the color photographs the Division had lodged with the court prior to cross-examining the witness. She also required the Division to provide all counsel with color photocopies of the photos.

that T.M. would not want the five-year-old to wash for two or three days.

Upon receipt of the referral, a Division caseworker spoke to T.M. and confirmed Della spent the prior weekend with her father and his fiancé. The caseworker testified that T.M. admitted disciplining Della by "us[ing a] belt to hit her on the butt."

The caseworker interviewed Della and her nine-year-old sister, both of whom reported that their mother and her boyfriend hit them with a belt when they were bad. The nine-year-old told the caseworker that she had heard her mother and her mother's boyfriend beat Della the prior Wednesday or Thursday for her "bad behavior in school." Della was in her mother's bedroom with her mother and the boyfriend. Although the nine-year-old had not seen her sister get hit, the child told the caseworker "[s]he heard her [sister] cry and scream." Upon examining Della with T.M.'s consent, the worker saw a light, three-inch bruise on the child's inner thigh, which appeared to be healing and a circular bruise, one or two inches above her right knee. The worker observed no other bruising.

The caseworker testified she interviewed T.M.'s boyfriend[3] and a woman temporarily residing with the family. The boyfriend admitted physically disciplining the nine-year-old on three or four occasions. Although he also admitted disciplining Della the week before, he claimed it was the first time he had done so. According to the case worker, the boyfriend told her he hit Della with a belt for misbehaving at school, being disrespectful to her teachers and throwing toys at other students. The boyfriend, who admitted being 5'10" and weighing 285 pounds, claimed he hit Della, a slim child standing about three feet, no more than ten times. Asked to estimate how hard he hit the child on a scale of one to ten, with ten being the hardest, he rated it a four. The woman living with the family told the caseworker that T.M. used non-physical forms of discipline with the children but also disciplined them by beating them with a belt.

The caseworker testified she re-interviewed T.M. and both children several days later, after receiving the photographs

---

[3] The boyfriend was identified as defendant O.G. The Division later learned he pled guilty in 2002 to sexual assault of a child under thirteen and criminal sexual contact with another child under sixteen and was sentenced to five years in State prison and required to register for community supervision for life under Megan's Law. Although the judge found he had abused Della by administering excessive corporal punishment, he did not appeal and is thus not part of this proceeding.

A-4132-14T3

from the fiancé. The caseworker claimed she was startled by the pictures, because it appeared Della had been beaten "pretty bad." She showed the pictures to Della, who confirmed the bruises depicted were the result of the beating she had received the prior week from her mother and the boyfriend, who had hit her with a belt and a hairbrush.

The caseworker also showed the photos to T.M., who admitted the beating may have resulted in the bruising depicted on the child's buttocks. She also admitted the bruise to Della's inner thigh, near "the private area" and her outer thigh could also have been from the belt.

The worker testified that after consulting with Dr. Gladibel Medina, the board certified pediatrician and child abuse specialist who examined both children, the Division substantiated both T.M. and her boyfriend for abuse and neglect and removed the children from their home. When asked why, she explained, "for a five-year-old, I mean, these were severe beatings. . . . [I]t wasn't like a light tap or . . . one or two hits. It was all over her body. [I]t was clear to us from the pictures that it was excessive and it was forceful." The worker also explained that this was the Division's fourth encounter with this family, and that T.M. had previously attended parenting classes, and thus had been instructed on

appropriate ways of disciplining her children.[4]  Indeed, T.M. had

agreed not to use corporal punishment on the children in

connection with one of the earlier referrals.

The Division's expert, Dr. Medina, testified to her

examination of the children and the opinions she developed as a

result of those examinations and the photos taken of Della's

bruises by her father's fiancé.  The doctor recounted the

statements both children made to her that their mother would hit

them with a belt when they misbehaved.  Dr. Medina reviewed the

color photographs taken by the fiancé and described multiple

linear bruises she claimed demonstrated "[r]epeated forceful

impacts" delivered with enough force to cause trauma in the form

---

[4] The Division's first contact with T.M. was in 2004 when Della's
sister, then two years old, was found wandering outside
unattended.  T.M. admitted leaving the child at home alone for
over an hour while she ran an errand.  The Division
substantiated T.M. for neglect, and she was criminally charged
with child endangerment and entered the pre-trial intervention
program.  In 2007, the sister's daycare contacted the Division
when the child revealed she had received the bruise on her lip
when her mother "popped" her because she had misplaced a domino.
The Division closed that referral as unfounded when the worker
did not observe any bruising, and the child clarified her mother
would only "tap" her on the lips when she lied.  T.M., however,
agreed to forgo corporal punishment of the children in the
future.  In 2009, the school reported the child, then seven
years old, had red and blue bruises on her forearm and inner
thigh.  The child claimed her father, who was caring for her
while her mother was in the hospital, had beaten her for poor
grades.  Although both parents admitted to hitting the child,
those allegations were also deemed unfounded.

of broken blood vessels. Dr. Medina described several bruises of a purple-greenish discoloration on the child's buttocks and thighs, numerous red, green and purple bruises to the area of Della's lower buttocks, and a greenish abrasion to her left upper thigh. She testified on the basis of the photos that sixty percent of the child's buttocks had been bruised and fifty percent of both thighs.

Although testifying she had initially characterized the bruising depicted in the photos as life-threatening, she explained that was because she believed the pictures of Della's legs were of her abdomen, and thus close to vital organs, and that all were taken at the same time. She clarified that her ultimate opinion, that Della had been physically abused by excessive force, was not changed based on several of the photos having been taken earlier, and that the child's injuries were not life-threatening. Asked about the lack of bruising when she examined the child only days after the photos were taken, Dr. Medina testified the absence of any significant bruising was consistent with the timeframe of three days to two weeks in which those injuries would normally heal.

The Division played a tape of Della's interview by the Union County Prosecutor's Office at the fact-finding hearing. In it, the child described the beating administered by her

mother and the boyfriend and claimed both had beaten her at least ten times before.

Although T.M. did not testify, she presented the testimony of the Director of Della's preschool and one of her teachers. Both claimed Della was prone to make up stories and neither claimed ever to have seen any bruises on the child. A third witness, T.M.'s friend and Della's godmother, testified for T.M. as well. Although the friend denied ever seeing bruises on Della, she acknowledged that T.M., in addition to taking away toys or privileges, would "spank" her daughters. She claimed T.M. would only do so as a last resort, "on occasion" with a belt while they were dressed. She also testified to seeing T.M. hit the children on occasion with her hands when their pants were down. She maintained she never saw T.M. inappropriately discipline her children.

After the conclusion of the testimony, Judge Kenny determined that T.M. had abused Della by engaging in excessive corporal punishment. In a thorough and thoughtful opinion delivered from the bench, the judge recapped the testimony of the witnesses and made credibility findings. She reviewed the relevant exhibits, most notably the color photographs taken by Della's father's fiancé and discussed, in detail, the controlling cases.

Noting that T.M. admitted to striking Della with a belt and inflicting at least one of the bruises depicted in the photos in evidence, the judge found there was no "serious question" but that the injuries inflicted on the child were inflicted by T.M. and her boyfriend, and "really nothing to contradict the Division's prima facie case." The judge found "the Division . . . met its burden by a preponderance of the evidence and more as to how those injuries were inflicted on her."

Addressing the photographs, the judge noted the opportunity she had

> to review those pictures. And we can analyze case law, but I don't know how you . . . beat a child in such a way to show the bruises that I see in the exhibits that the State offered of this child which the child corroborated. The child testified in her [recorded statement to the prosecutor], that's me, those are the bruises on me that they — that they hit me with [a belt and a hairbrush]. I . . . don't know how you can say that it's not excessive, particularly in light of the purported reason for . . . giving her, a . . . barely five-year-old child this kind of beating.

Turning to the question of whether the punishment inflicted was excessive, the judge noted

> an incident will be considered excessive if there's a pattern of inappropriate corporal punishment or if the motivation for the corporal punishment is unreasonable, and I find both of those instances have been met —

the proofs have been met by the Division in this case.

Observing that "[p]unishment is excessive if the child suffers lacerations or the punishment is severe given the circumstances and the child's age," the judge relied on Dr. Medina's testimony regarding the repeated forceful impacts necessary to have inflicted the extent of the bruising on the child's thighs and buttocks.

Judge Kenny concluded:

> So with all of this, I have a barely five-year-old child being left with the — the kinds of welts and abrasions that I see in the pictures here. I don't have the color photographs out here with me, but . . . they're pretty horrifying to think that a tiny little girl five years old could be beaten in that way or to be beaten at all with an implement and without her clothes on. For what? For as much as I can determine, it's for being bad at school . . . .
>
> [I]'m satisfied that the Division . . . has established by a preponderance of the evidence that there were repeated acts — repeated times that there were beatings of — of this little child. And I'm satisfied that as minimum, on this last occasion, the welts left there, the use of a belt, the use of two people, two people beating this child 'til she's crying and screaming that her sister can hear her, that — that two or three Days later someone seeing the bruising is . . . upset and horrified by it enough to call DYFS which she was right to do, I'm satisfied that excessive corporal punishment was used.

11

The only issue defendant raises for our consideration concerns the absence of the original photographs in the record on appeal. Following the filing of the notice of appeal, defendant's appellate counsel sought the color photographs admitted at trial. Unable to obtain them from the court or any of the other parties, counsel made a motion for remand "to clarify whether the judge saw actual photographic prints or was looking at the scanned color photocopies." If the judge relied on color prints, counsel requested that we order the Division to produce the photographs.

We granted the motion for remand. Judge Kenny convened trial and appellate counsel and made clear for defendant's appellate counsel that original photographs were produced at the fact-finding hearing. Although defendant's trial counsel was not present, the court and all other trial counsel confirmed that each of the lawyers and the witnesses were looking at one set of fourteen original photographs that were marked in evidence. Unfortunately, the original photographs, which the Division believed were in the court's file at the conclusion of the fact-finding hearing and court staff believed were returned to Division's counsel, were lost, leaving only the color

photocopies the Division provided to the court and counsel for their use at trial.

Judge Kenny wrote to this court, providing a comprehensive recap of the situation, and confirmed that in rendering her decision, she viewed and referenced the fourteen color photographs admitted into evidence without objection on the first day of the fact-finding hearing. Judge Kenny further noted "[t]he color copies, which are still available, depict a good deal of the bruising on [Della's] legs, inner thighs, and buttocks, but, unfortunately, not as vividly as the originals."

The judge, however, underscored that her "finding of the use of excessive corporal punishment did not rest on the photographs alone, compelling as they are" but also on the credible testimony of the witnesses, including Della, and T.M's admissions of striking the child with a belt. The judge also referenced the odd request by T.M. to Della's father not to bathe the child. The father and his fiancé ignored that request and in the course of bathing Della, the fiancé discovered the bruising. Judge Kenny found T.M.'s apparent effort to conceal the child's bruises, demonstrated "her consciousness of the excessive nature of the corporal punishment."

Defendant contends we should vacate the judgment "because, without the missing photographic prints, there is no evidence

13

that the corporal punishment [T.M.] administered was excessive."

Counsel further argues that in the absence of "the actual

photographs, an appropriate merits argument cannot be made for

[T.M.]" depriving her of the effective assistance of appellate

counsel.  We reject those arguments as utterly without merit.

See State v. Gaskin, 325 N.J. Super. 563, 571-72 (App. Div.

1999), certif. denied, 164 N.J. 190 (2000) (rejecting as without

merit the defendant's argument that the trial court's failure to

preserve two photographs introduced by the State without

objection at trial required vacation of the conviction).

Our review of the trial court's factual findings in a Title

9 abuse and neglect proceeding is limited to determining whether

those findings are supported by adequate, substantial, and

credible evidence in the record.  N.J. Div. of Youth & Family

Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002).  If

the findings have such support in the record, we are bound by

them in deciding the appeal.  Rova Farms Resort, Inc. v.

Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974).

Title 9 defines an "abused or neglected child" as including

> a child whose physical, mental, or emotional
> condition has been impaired or is in
> imminent danger of becoming impaired as the
> result of the failure of his parent or
> guardian, as herein defined, to exercise a
> minimum degree of care . . . (b) in
> providing the child with proper supervision

14

or guardianship, by unreasonably inflicting
or allowing to be inflicted harm, or
substantial risk thereof, including
the infliction of excessive corporal
punishment . . . .

[N.J.S.A. 9:6-8.21c(4)(b).]

Although "excessive corporal punishment" is not defined, the Supreme Court has noted that "by qualifying the prohibition with the term, 'excessive,' the statutory language plainly recognizes the need for some parental autonomy in the child-rearing dynamic that, of necessity, may involve the need for punishment." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 36 (2011). Determining when corporal punishment has become "excessive" requires the exercise of the judgment reposed in the judges of the Family Part. While "[a] slap of the face of a teenager as a form of discipline — with no resulting bruising or marks — does not constitute 'excessive corporal punishment' within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b)," ibid., "there is absolutely nothing reasonable about inflicting harm, in the form of paddling, upon a five-year-old child because the child told a neighbor that their home was without electricity." Dep't of Children & Families v. C.H., 414 N.J. Super. 472, 481 (App. Div.), adhered to on reconsideration, 416 N.J. Super. 414 (App. Div. 2010), certif. denied, 207 N.J. 188 (2011).

Having reviewed the record, we are convinced that, as in C.H., defendant's hitting her five-year-old daughter repeatedly with a belt with enough force to leave sixty percent of the child's buttocks and fifty percent of both thighs badly bruised is excessive corporal punishment within the meaning of N.J.S.A. 9:6-8.21c(4)(b). The unavailability of the actual photographs of the child's bruises, at this point in the proceedings, does not change that result or deprive defendant of any meritorious argument.

Our inability to see the actual photographs is no different than our inability to see and hear the witnesses testify. It is in the nature of appellate review, and explains precisely why we are so dependent on the diligence and good judgment of the judges of the Family Part. We defer to a trial court's factual findings because the trial judge "has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand" and get "a feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citation and internal quotations marks omitted). The record we review "can never adequately convey the actual happenings in a courtroom."

N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).[5]

Having reviewed the record and Judge Kenny's careful findings, including her assessment of the testimony of the witnesses who saw the actual bruises, and her own assessment of the original photographs, we find no basis to second-guess the judge's considered judgment in this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] While perhaps not conveying the bruises inflicted on this small child as vividly as the actual photographs admitted at the fact-finding hearing, the photocopies in the appendix are certainly sufficient to convey the injuries Judge Kenny described.

A-4132-14T3