**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5875-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDRE GREEN, a/k/a
DRE ANDRAE GREEN 13,

     Defendant-Appellant.

_____

Submitted November 9, 2020 – Decided January 4, 2021

Before Judges Messano, Hoffman, and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-06-0488.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Lauren Bonfiglio, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Andre Green appeals from the judgment of conviction entered after a jury found him guilty of first-degree murder, N.J.S.A. 2C:11-3(a), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). The case arose from the fatal shooting of Antoine Garris in a Paterson bar on September 15, 2014. For the murder conviction, the trial judge sentenced defendant to a sixty-year term of incarceration, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[1]

Defendant was first tried on charges related to the murder of Garris in September 2017. When the jury could not reach a unanimous verdict, the trial judge declared a mistrial. The State retried defendant in March and April 2018, culminating in the conviction and sentence under our review.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> IT WAS REVERSIBLE ERROR TO ADMIT EVIDENCE THAT DEFENDANT ASSAULTED HIS WIFE TO PROVE IDENTITY AND MOTIVE UNDER N.J.R.E. 404(B).
>
> POINT II
>
> WHERE THERE WAS EVIDENCE THAT DEFENDANT MADE THREE DAMAGING ORAL STATEMENTS, BUT THE COURT ONLY

---

[1] The judge merged the weapons offense conviction into the murder conviction.

INSTRUCTED THE JURY TO EVALUATE TWO OF THEM, THE OMISSION OF THE THIRD STATEMENT FROM THE INSTRUCTION IS REVERSIBLE ERROR.

POINT III

THE SENTENCE OF 60 YEARS, 51 YEARS WITHOUT PAROLE, IS BASED ON SERIOUS AND PREJUDICIAL ERRORS IN THE SENTENCING PROCESS, AND IS EXCESSIVE.

Following our review of the record and the controlling legal principles, we affirm.

Before addressing defendant's arguments, we set forth a summary of the relevant facts derived from the trial record. In the afternoon of September 15, 2014, witnesses observed defendant fighting with his wife in a car parked outside of a bar in Paterson. Defendant exited the car but continued to yell at his wife, prompting Garris to emerge from the bar to tell defendant to leave. At that point, the two men got into a fist fight. Defendant left the scene at the end of the fight, but returned fifteen minutes later armed with a gun. Defendant entered the bar and shot Garris to death before fleeing. On October 8, 2014, federal marshals located and arrested defendant in Rochester, New York without incident.

3

Before defendant's first trial, the trial court held a hearing pursuant to N.J.R.E. 104(c) to consider the State's motion to admit certain evidence. In its motion, the State sought to elicit testimony from witnesses Jelessa Dennison and Wayne Clyburn, who would testify they saw defendant physically fighting with his wife outside of the bar where Garris was murdered, shortly before the shooting. The State argued this evidence was admissible under N.J.R.E. 404(b) for the purpose of proving defendant's identity as the killer and to show that his motive for the killing was retaliation against Garris for intervening in defendant's fight with his wife. Defendant objected to this evidence as failing to meet the requirements of N.J.R.E. 404(b).

The trial court granted the State's motion to allow the testimony describing defendant's altercation with his wife, finding it admissible to prove motive and identity and determining it met the requirements set forth by our Supreme Court in State v. Cofield, 127 N.J. 328, 338 (1992). However, the court limited its ruling to admit only Dennison's testimony because she specifically identified defendant as the man "hitting" his wife in the car while Clyburn said he could not identify the car's occupants.

Before defendant's second trial began, the trial court afforded the parties the opportunity to present arguments on preliminary motions beyond those

raised in the first trial. Defendant's attorney expressed his desire to "incorporate [his] arguments from the first trial."

At trial, the State presented an abundance of other evidence and testimony in their case against defendant, including testimony from fifteen witnesses. A federal deputy marshal testified that after defendant's arrest in New York, he made incriminating statements about the murder of Garris. According to the deputy marshal, while he asked defendant biographical questions during the booking process, defendant, unprompted and without having received <u>Miranda</u> warnings, made several statements. The deputy marshal testified that defendant

> said that he did not regret what he did. He said that the victim screwed his life up and that he deserved it, what happened to him. He said that he was arguing with his girlfriend. He did not appreciate what the other individual was saying to him, and that is why he shot him. He said that he didn't want to spend the next [twenty-five] years in jail, but accepted it as reality, and then he said that he would plead to manslaughter, but not murder.

Another witness, Davon Bunch testified that on the day of the murder, he was in the bar with Garris when defendant entered, argued with Garris, and shot Garris several times. Bunch testified that he chased defendant, as defendant ran from the bar after the shooting, until defendant "jumped in a white car that pulled up" and drove off. The State played street surveillance video from outside the

bar, which allowed Bunch to identify defendant fleeing from the bar as well as himself and Clyburn running after defendant.

A New Jersey State Police detective testified, with "practical certainty," that seven shell casings found in the bar "were all discharged from the same firearm." The gun, however, was never recovered.

The sister of Garris and his sister's cousin testified about incriminating statements defendant made to them in phone calls and a text. After the killing of Garris, the two women made numerous attempts to contact defendant and defendant's wife. The sister testified that after arguing with defendant on the phone, defendant texted her, "Now you see why he's dead." The trial court admitted a screenshot of this text message. Additionally, the cousin of the sister testified that defendant called her and her cousin and stated over the phone, "stop contacting my wife, and stop calling my phone, or you're going to get the same thing as your brother."

Dennison also testified, identifying defendant and recounting that on the date of the murder, she was smoking a cigarette outside of the bar when she observed, "[defendant] and his baby mom was arguing and fighting in the car" and "[defendant] was beating on his baby mom while the kids was right in the back." Dennison stated that defendant then "got out of the car. He was angry

still . . . . He still was ramping (sic) and raving." Dennison stated that in response, Garris, who was at the bar, told defendant to leave so as to not attract the police. This remark sparked a fight between defendant and Garris, which occurred "[r]ight there in front of the [bar]." According to Dennison, "[Garris] was beating on [defendant]. He was beating him up."

Dennison added that in the course of the fist fight, to Garris, "[defendant] said, 'I'm going to kill you.'" Because Dennison had not mentioned this threat in her statement to police or when testifying during defendant's first trial, defendant's counsel vigorously cross-examined Dennison about this inconsistency as well as other inconsistencies in her statements and identification.

Dennison testified that she left the bar shortly after the fist fight and walked down the street, where she remained for about fifteen minutes until she heard gunshots coming from the direction of the bar. The State played the surveillance footage from outside the bar, and Dennison identified herself in front of the bar and identified defendant entering the bar and fighting with Garris outside of the bar. She further identified herself in the footage walking down the street away from the bar shortly after the fight.

Clyburn also provided testimony. He recounted that prior to the shooting, he witnessed a couple fighting in a car, "just going back and forth, smacking each other." Though at defendant's first trial, Clyburn testified he could not identify the car's occupants, at the second trial, Clyburn testified he recognized defendant as he exited his vehicle. Clyburn left the area before the fist fight, walking down the street to sit down with a friend. Soon thereafter, Clyburn heard the gunshots coming from the bar and ran back up the street towards the bar.

As he approached the bar, Clyburn saw a man leave the bar and saw Davon Bunch run after him. Clyburn joined the pursuit. However, the man evaded Clyburn and Bunch by hopping into the back of a white car, which promptly sped off. Clyburn testified that he recognized defendant as the man he chased from behind alongside Bunch. However, Clyburn had not told police he recognized the assailant when questioned at the scene immediately after the murder. Defendant's counsel extensively cross-examined Clyburn's identification of defendant and his ability to remember what happened.

I.

We first consider defendant's claim that the trial court committed reversible error by admitting, under N.J.R.E. 404(b), evidence showing

defendant assaulted his wife prior to the murder of Garris. This argument lacks merit.

We review a trial court's ruling on the admissibility of other crimes, wrongs, or bad acts evidence for abuse of discretion. State v. Barden, 195 N.J. 375, 390-91 (2008). We afford great deference to the court's ruling and will reverse only where there was a clear error of judgment. Ibid.

N.J.R.E. 404(b) governs other crimes, wrongs, or acts evidence as follows:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"'Because N.J.R.E. 404(b) is a rule of exclusion rather than a rule of inclusion,' the proponent of evidence of other crimes, wrongs or acts must satisfy a four-prong test." State v. Carlucci, 217 N.J. 129, 140 (2014) (quoting State v. P.S., 202 N.J. 232, 255 (2010)). Under this test, commonly known as the Cofield test, to be admissible under N.J.R.E. 404(b), the evidence of the other crime, wrong or act: (1) "must be admissible as relevant to a material issue;" (2) "must be similar in kind and reasonably close in time to the offense charged;" (3) "evidence of the other crime must be clear and convincing;" and (4) its probative

value "must not be outweighed by its apparent prejudice." Cofield, 127 N.J. at 338.

To satisfy the first prong of the Cofield test, the evidence must have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." See N.J.R.E. 401 (defining "[r]elevant evidence"). The evidence must also concern a material issue, "such as motive, intent, or an element of the charged offense." State v. Rose, 206 N.J. 141, 160 (2011) (quoting P.S., 202 N.J. at 256). Under Cofield, an issue is material if "'the matter was projected by the defense as arguable before trial, raised by the defense at trial, or was one that the defense refused to concede.'" Ibid. (quoting P.S., 202 N.J. at 256). "[M]otive is a material issue in dispute where the defendant asserts his innocence." State v. Castagna, 400 N.J. Super. 164, 178 (App. Div. 2008) (citing State v. Amodio, 390 N.J. Super. 313, 330 (App. Div. 2007)). Likewise, identity is a material issue when a defendant claims he was not the perpetrator of the charged crime. See State v. Sterling, 215 N.J. 65, 99 (2013); State v. Baluch, 341 N.J. Super. 141, 192 (App. Div. 2011).

Proof of the second prong is not required in all cases, but only in those that replicate the facts in Cofield, where "evidence of drug possession that occurred subsequent to the drug incident that was the subject of the prosecution

was relevant to prove possession of the drugs in the charged offense." Barden, 195 N.J. at 389.

The third prong requires clear and convincing proof that the person against whom the evidence is introduced actually committed the other crime or wrong. Carlucci, 217 N.J. at 143. "[T]he prosecution must establish that the act of uncharged misconduct . . . actually happened by 'clear and convincing' evidence." Rose, 206 N.J. at 160.

Last, the fourth prong is "generally the most difficult part of the test." Barden, 195 N.J. at 389. "Because of the damaging nature of such evidence, the trial court must engage in a 'careful and pragmatic evaluation' of the evidence to determine whether the probative worth of the evidence is outweighed by its potential for undue prejudice." Ibid. (quoting State v. Stevens, 115 N.J. 289, 303 (1989)). The analysis incorporates balancing prejudice versus probative value required by N.J.R.E. 403, but does not require, as does N.J.R.E. 403, that the prejudice substantially outweigh the probative value of the evidence. State v. Reddish, 181 N.J. 553, 608 (2004). Rather, the risk of undue prejudice must merely outweigh the probative value. Ibid. (citations omitted).

Notwithstanding this higher standard for admission, a "very strong" showing of prejudice is required to exclude motive evidence under this prong.

Castagna, 400 N.J. Super. at 180 (quoting State v. Covell, 157 N.J. 554, 570 (1999)). "A wide range of motive evidence is generally permitted, and even where prejudicial, its admission has been allowed in recognition that it may have 'extremely high probative value.'" Rose, 206 N.J. at 165 (quoting State v. Long, 173 N.J. 138, 164-65 (2002)).

However, in order to minimize "the inherent prejudice in the admission of other-crimes evidence, our courts require the trial court to sanitize the evidence when appropriate." Barden, 195 N.J. at 390 (citation omitted). Moreover, where a court concludes evidence is admissible, it must issue a careful, precise limiting instruction to the jury as to the appropriate use of the evidence. Cofield, 127 N.J. at 340-41. Applying these standards, we find no abuse of discretion in the trial court's admission of the evidence showing defendant was arguing with and hitting his wife before Garris intervened.

Regarding the first Cofield prong, defendant contends, "evidence that [defendant] assaulted his wife was not relevant to any material issue in dispute." We disagree. Defendant's motive to kill Garris and his identity as the perpetrator were material issues in dispute because, as defendant acknowledges in his brief, at trial, he asserted his innocence by "den[ying] the shooting[] and rais[ing] an identification defense." Defendant's fight with his wife shortly before the

murder was relevant to the issue of motive because it explains why defendant would be angered enough to murder: Garris intervened in defendant's contentious marital dispute. Additionally, defendant's fight with his wife was relevant to the issue of identity because it places defendant at the bar at the time of the shooting and shows he had access to a white car, which witnesses Bunch and Clyburn described the shooter entering, just before the car sped away.

Defendant does not challenge the second or third prong of the Cofield test, but regarding the fourth prong, defendant argues the testimony of Dennison and Clyburn stating they witnessed defendant "smacking and beating" his wife "was inadmissible as proof of motive because it was more prejudicial than probative." Relatedly, defendant asserts:

> The evidence could have been sanitized: Rather than telling the jury that [defendant] was smacking and beating his wife and tracing the fallout from that violent and prejudicial act to the subsequent shooting, the state could have told the jury that [defendant] had a loud argument with his wife, and traced a path from the argument to the shooting.

There is some merit to defendant's argument regarding the fourth prong. The allegation that defendant engaged in domestic abuse had the potential of being used improperly by the jury for propensity purposes. See State v. Vallejo, 198 N.J. 122, 132-134 (2009)(discussing the prejudicial impact of informing a

13

jury of a defendant's prior domestic violence restraining order). It was unnecessary for the purposes of proving motive or identity for the trial court to allow Dennison and Clyburn to testify specifically about the physical and violent nature of defendant's fight with his wife before Garris intervened. It would have been sufficient to limit their testimony to providing that defendant and his wife were arguing in a car outside the bar before Garris interjected, which caused the physical altercation between defendant and Garris.

Nevertheless, the trial court decreased the prejudicial impact of the inflammatory details regarding defendant's violent conduct towards his wife by providing separate limiting instructions after the testimony of both Clyburn and Dennison. These instructions explained the narrow purpose for which the jury could consider the "evidence that the defendant was allegedly engaged in a verbal or physical dispute with a woman . . . and the victim outside of [the bar] shortly before the murder[,]" and also instructed the jury to consider whether they believed defendant had even committed the alleged wrong against his wife. Additionally, in charging the jury at the conclusion of the trial, the court reread the same limiting instruction pertaining to defendant's alleged prior bad act. These limiting instructions may have been sufficient to cure the prejudice associated with the admission of this extraneous evidence. See, e.g. Rose, 206

14

N.J. at 165-167 (affirming the admission of non-sanitized 404(b) evidence because the trial court's "limiting instruction properly informed the jury about the distinction between the permitted and prohibited uses of the evidence in sufficient reference to the specific facts of this case.").

In any event, we are satisfied that any error regarding this issue was harmless. Even where evidence of prior bad acts is improperly admitted, where there is "overwhelming proof" of guilt submitted by the State that is "independent of the other-crimes evidence," the error is harmless and reversal is not required. State v. Gillispie, 208 N.J. 59, 93 (2011)(finding the trial court's failure to sanitize and provide a limiting instruction for other-crimes evidence was harmless error when the State's other proofs included the defendant's admission to a detective that he committed the crimes and witness testimony implicating the defendant in the charged murder).

The other evidence presented by the State overwhelmingly showed defendant murdered Garris. This evidence included defendant's statements to the deputy marshal and to the sister of Garris and her cousin, in which defendant admitted he killed Garris. Additionally, witness Bunch testified that he literally watched defendant commit the murder inside the bar and then chased defendant as he fled from the scene. Thus, even if the testimony about defendant assaulting

15

his wife had been completely excluded from the trial, the outcome of the trial likely would not have changed. We are satisfied that any error here was not "clearly capable of producing an unjust result." R. 2:10-2.

Defendant also argues that, beyond the requirements set forth in Cofield, our Supreme Court imposed additional requirements for evidence to be admitted as proof of identity under N.J.R.E. 404(b) in State v. Sterling, 215 N.J. 65 (2013). Defendant claims that the Court in Sterling ruled there were only three narrow circumstances in which other-wrongs evidence could be admitted for the purpose of proving a defendant's identity. Those three circumstances are: "when defendant's connection to the first crime was established by specific evidence discovered during the second crime[,] . . . when a particular weapon or disguise used in one crime connects a defendant to another offense[,]" or "when the State attempts to link a particular defendant to a crime on the basis of modus operandi[.]" Id. at 92-93. Defendant asserts that the State's presentation of witness testimony indicating he assaulted his wife outside of the bar before killing Garris did not fit within any of these three circumstances, and therefore, the trial court erred in finding this evidence admissible for the purpose of proving defendant's identity as the murderer. We disagree.

16

Plainly, Sterling did not limit the circumstances in which other-wrongs evidence may be admitted for the purpose of proving identity. Sterling involved the issue of joinder, the defendant challenging on appeal the joinder of charges stemming from multiple separate criminal episodes in a single trial. Id. at 71. The question of whether the defendant's charges were properly joined was necessarily intertwined with N.J.R.E. 404(b), as the determination of prejudice from joinder requires a finding of whether or not the evidence of the offenses sought to be severed would be admissible as other-crimes evidence in a separate trial. Id. at 73. The State argued that the charges were properly joined because "the factual underpinnings to the offenses with which defendant was charged – burglaries of women's homes and related sexual assaults – bore indicia of 'signature crimes[.]'" Id. at 71. It was in considering this argument, the Court discussed various relevant examples of other-crimes evidence being admitted to prove a defendant's identity. Id. at 92-93. The Court did not enumerate those examples as the only circumstances in which other-crimes evidence could be offered for the purpose of proving identity.

Even so, the first two examples discussed by the Court in Sterling reasonably apply in this case. Defendant asserts the first example, "when defendant's connection to the first crime was established by specific evidence

discovered during the second crime," does not apply because his case represented the reverse: the State sought to establish defendant's connection to the second crime, murder, using evidence of the first bad act, defendant hitting his wife. However, it is irrelevant whether the other crime occurred before or after the subject crime. See State v. Harvey, 121 N.J. 407, 432-434 (1990) (finding the trial court did not abuse its discretion in admitting, on the issue of identity, evidence showing the defendant stole a hatchet from someone a week before the victim was killed using a similar instrument); State v. Gaskin, 325 N.J. Super. 563, 572-573 (App. Div. 1999) (upholding the admission of evidence showing the defendant committed a robbery thirty minutes prior to the robbery for which the defendant was prosecuted, which was used to prove the defendant was the perpetrator of the second robbery); State v. Jenkins, 349 N.J. Super. 464, 478 (App. Div. 2002) (upholding as relevant to the question of the defendant's identity, the admission of evidence that the defendant had access to a gun a few weeks before the shooting death of the victim).

Here, the commotion surrounding defendant's fight with his wife connected defendant to both the location of the murder as well as the murder victim. The use of defendant's first bad act to identify him as the perpetrator of

18

the second bad act is thus consistent with the controlling case law concerning the admission of 404(b) evidence to prove a defendant's identity.

The second example discussed by the Court in Sterling, "when a particular weapon or disguise used in one crime connects a defendant to another offense," also applies. Defendant's alleged assault of his wife took place in a white car outside of the bar where the victim was murdered. The murderer was later seen fleeing in a white car. While not literally a weapon or disguise, the white car – within which defendant committed the first bad act – was an instrumentality connecting defendant to the murder.

Finally, though not mentioned in Sterling, we have held that the State may introduce 404(b) evidence to prove the defendant's identity when a defendant alleges someone else committed the charged offense. Baluch, 341 N.J. Super. at 192 (affirming the admission of 404(b) evidence showing the defendant had previously abused the victim to rebut the defendant's argument at trial that another person caused the victim's injuries). Here, defendant raised an identification defense at trial, therefore enabling the State to present 404(b) evidence to negate this theory of the case and identify defendant as the true perpetrator of the murder.

A-5875-17T3

In short, evidence of defendant's earlier fight with his wife was properly admitted under 404(b) for the purposes of proving identity. Regardless, any alleged error would have been harmless for the same reasons previously noted.

II.

In his second argument, defendant contends the trial court committed plain error by failing to give a <u>Kociolek</u>[2] charge for the portion of Dennison's testimony where she described defendant threatening to the kill Garris during their fist fight outside of the bar. Given the facts of this case, we are not persuaded the failure to give a <u>Kociolek</u> charge constituted plain error.

The <u>Kociolek</u> charge pertains to the reliability of an inculpatory statement made by the defendant to any witness. <u>State v. Jordan</u>, 147 N.J. 409, 420-21, (1997). As explained in <u>Kociolek</u>, the court should instruct the jury to "receive, weigh and consider such evidence with caution in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer." <u>Id.</u> at 420 (quoting <u>Kociolek</u>, 23 N.J. at 421).

Defendant asserts the trial court's failure to provide a <u>Kociolek</u> charge for defendant's alleged threat "invited the jury to infer that the threat . . . was not

---

[2] <u>State v. Kociolek</u>, 23 N.J. 400 (1957).

subject to the scrutiny that applied to the other oral statements[,]" and therefore to accept its utterance as fact. Defendant describes the omission of this instruction as "conspicuous" because the court provided cautionary instructions for two other incriminating statements attributed to defendant.

Although our Supreme Court has directed the <u>Kociolek</u> charge to be given whether or not specifically requested by a defendant, it has also determined that the failure to give this charge is not plain error per se. <u>State v. Jordan</u>, 147 N.J. 409, 428 (1997) (noting it would be "a rare case where failure to give a <u>Kociolek</u> charge alone is sufficient to constitute reversible error"). We have held that "[w]here such a charge has not been given, its absence must be viewed within the factual context of the case and the charge as a whole to determine whether its omission was capable of producing an unjust result." <u>State v. Crumb</u>, 307 N.J. Super. 204, 251 (App. Div. 1997) (finding "no reported case in which a failure to include a Kociolek charge has been regarded as plain error.").

We discern no plain error here. As previously noted, there was substantial evidence establishing defendant's guilt, independent of Dennison's testimony attributing this threat to defendant. Moreover, both the trial court and defendant's counsel put the jury on notice that it should view Dennison's testimony with skepticism. Defendant's counsel cross-examined Dennison

21

extensively and vigorously about her claim that defendant made this threat, which called into question the veracity and credibility of Dennison's claim. See State v. Harris, 156 N.J. 122, 183 (1998) (finding the trial court's failure to give a Kociolek charge was not plain error because opposing counsel's "devastating cross-examination" accomplished the principal goal of the Kociolek charge, which is to "to cast a skeptical eye on the sources of inculpatory statements attributed to a defendant."). Additionally, the trial court's other charges, which instructed the jury to consider with caution all statements attributed to the defendant and to generally consider the credibility of the witnesses against him, were sufficient to inform the jury to scrutinize defendant's alleged threat against Garris. We thus find no capacity for an unjust result here.

III.

In his final argument, defendant contends the trial court utilized a flawed sentencing process, resulting in an excessive sentence. We disagree.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). In reviewing a sentence, the court must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the

22

record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); Roth, 95 N.J. at 364-65). However, "when the trial court double counts or considers an improper aggravating factor[,]" a remand for resentencing is necessary. State v. Carey, 168 N.J. 413, 424 (2001).

The trial court sentenced defendant to a sixty-year term of imprisonment with a fifty-one year period of parole ineligibility under NERA. In its sentencing decision, the court explained how it arrived at this sentence. The court began by applying and balancing the applicable sentencing factors, finding aggravating factors three, the risk that defendant will commit another offense, and nine, the need for deterring defendant and others from violating the law, applied. The court also noted it found the offense "pretty heinous" though it did "not rise to the level of meeting aggravating factor one." Regarding mitigating

factors, the court found mitigating factor eleven, the imprisonment of defendant would be an excessive hardship to himself or his dependents, applied, though the court qualified that it was "not going to give it a whole lot of weight." Balancing those factors, the court stated, "the court is clearly convinced that the aggravating outweigh the mitigating."

The trial court then noted the sentencing range for first-degree murder spans from thirty to seventy-five years. Accordingly, it calculated "the middle range" of the sentence at fifty-two and a half years and determined based on the balancing of the factors, "that the sentence should be somewhere slightly higher than the middle range[,]" hence the court's arrival at a sixty-year term.

Defendant argues that the trial court erred by applying factor one, and that doing so amounted to impermissible double counting. Aggravating factor one is applied based on "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner." N.J.S.A. 2C:44-1(a)(1). According to defendant, finding aggravating factor one constituted double counting because the trial court used an element of the offense, the killing of Garris, as the sole basis for finding the aggravating factor.

24

After finding aggravating factors three and nine applied and immediately before imposing the sixty-year sentence, the trial court stated:

> This, although it might not rise to the level of meeting aggravating factor one, this was a pretty heinous offense.  <u>I'm not finding aggravating factor one, because I think it would be double counting.</u>  Or he's already being -- he is being sentenced for murder, but the point is this – there was an altercation. Clearly there was an altercation. It was over. It should have ended there.  To go back and get a gun and come back and shoot this person dead, I think it was six times, in front of all of his friends in this place where he hung out, to me, that was particularly cruel and depraved.
>
> [emphasis added.]

Defendant contends, "Notwithstanding the court's assertion that it would not find aggravating factor [one], it is almost impossible to read its comments as anything other than a de facto finding of the factor."  We disagree.

The trial court stated explicitly that it was not finding aggravating factor one because applying that factor would amount to double counting.  The court instead applied two other aggravating factors and one mitigating factor, with the latter not receiving "a whole lot of weight."  From balancing these factors, the court determined a sentence slightly higher than the midpoint of the sentencing range was appropriate.  The sentence imposed reflects the sentencing process described by the court, not a subconscious application of a third aggravating

factor. The trial court therefore did not err in applying aggravating factor one because it did not apply aggravating factor one.

Defendant also argues the trial court erred in failing to find mitigating factor seven, which applies when a "defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense." N.J.S.A. 2C:44-1(b)(7). We discern no error here. On the record, the trial court noted that prior to the murder, defendant previously committed two simple assaults, two ordinance violations, and one drug possession offense. Mitigating factor seven therefore was not "amply based in the record," State v. Case, 220 N.J. 49, 64 (2014) (quoting State v. Dalziel, 182 N.J. 494, 504 (2005)), and the trial court did not abuse its discretion by declining to apply this mitigating factor.

Finally, defendant contends the trial court erred by identifying fifty-two and a half years as its starting point for calculating his sentence. Defendant argues that because life is not a quantifiable number, the trial court inappropriately determined the high end of the sentencing range for murder was seventy-five years. Instead, defendant contends the court should have started at the statutory minimum for murder, thirty years, and remained at thirty or moved upward based on its balancing of the aggravating and mitigating factors.

26

Defendant believes the trial court identified this sentencing range by misreading NERA, N.J.S.A. 2C:43-7.2b, which provides, "Solely for the purpose of calculating the minimum term of parole ineligibility pursuant to . . . this section, a sentence of life imprisonment shall be deemed to be 75 years." (emphasis added).

The trial court did not abuse its discretion in identifying the sentencing range for first-degree murder to be thirty to seventy-five years. The sentencing scheme does not require judges use the statutory minimum sentence as their starting point when sentencing for murder. To the contrary, our Supreme Court has noted that one "reasonable" approach is for the court to begin its analysis in the middle range for the offense at issue and determine whether the factors justify departure above or below the middle range. State v. Fuentes, 217 N.J. 57, 73 (2014) (quoting State v. Natale, 184 N.J. 458, 488 (2005)). While NERA does not govern where the high end of the sentencing range for murder should be, its terms show that quantifying life as seventy-five years is a rational approach. Therefore, the trial court's sentencing approach was "reasonable" and cannot be considered an abuse of discretion resulting in an excessive sentence.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-5875-17T3